UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TIMOTHY CHARLES MORRIS,

    Plaintiff,

    v.

JAYCO, INC.,

    Defendant.

Case No. 3:22-CV-00861-GSL

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment. [DE 26]. For the following reasons, the Court GRANTS-IN-PART and DENIES-IN-PART Defendant's motion.

### A. Factual History

On February 28, 2021, Plaintiff purchased a new 2021 Entegra Vision 29F motorhome from RV One Superstores Myrtle Beach. [DE 35, ¶ 3]. This motorhome was manufactured by Defendant Jayco, who also provided a two-year warranty with its purchase. [*Id.* at ¶¶ 4, 11]. Plaintiff took possession of the motorhome on March 29, 2021. [DE 39, ¶ 71]. Plaintiff alleges that soon after taking possession of the motorhome, he began experiencing issues with the motorhome's entry door, including the door opening while the motorhome was moving and the door locking when it should not. [*Id.* at ¶¶ 72–74]. Plaintiff continued to experience these problems through the end of April 2021. [*Id.* ¶ 76].

On May 28, 2021, Plaintiff took the motorhome to RV One Superstores Raleigh, a Defendant authorized dealership, to have the entry door repaired. [*Id.* at ¶ 80]. The dealership attempted to fix this issue by adjusting the door latch. [*Id.* at ¶ 81]. This repair was paid for by

Defendant under the warranty. [*Id.*]. The parties dispute whether the motorhome was out of service for 11 or 13 days for this visit. [*Id.* at ¶ 82]. After this service visit, Plaintiff alleges that he continued to have issues with the motorhome's entry door opening while driving. [*Id.* at ¶ 82]. Instead of returning the motorhome to the dealership, Plaintiff took it to an unauthorized technician because of personal scheduling constraints. [*Id.* at ¶ 85]; [DE 35, ¶ 25]. The parties dispute the degree to which the unauthorized technician made repairs or modifications to the entry door. [DE 39, ¶ 86]. Subsequently, Plaintiff alleges that he went on a road trip and continued having issues with the door, including being locked out of the vehicle on an occasion and having to use bungee cord to secure the door closed on other occasions. [*Id.* at ¶¶ 88–91].

After returning from his road trip, Plaintiff scheduled another service appointment, and he returned to RV One Superstores Raleigh on September 16, 2021. [*Id.* at ¶ 93]. The dealership was unable to replicate the failure with the entry door or otherwise identify the root cause for Plaintiff's reported issues with the door. [*Id.* at ¶¶ 94–95]. Because of this, the dealer did not perform any repairs and no warranty claims were filed with Jayco. [*Id.* at ¶¶ 95–96]. For this appointment, Plaintiff's motorhome was out of service for 41 days, until October 26, 2021. [*Id.* at ¶ 96]. Plaintiff alleges as soon as he returned home with the motorhome, he again experienced issues with the entry door. [*Id.* at ¶ 96]. However, instead of returning immediately to the dealership, Plaintiff took the motorhome to Crown Ford for maintenance relating to a safety recall for a separate issue. [*Id.* at ¶ 97]. The vehicle was out of service for another 9 weeks because of this. [*Id.*].

On February 7, 2022, Plaintiff took his motorhome to a different authorized dealership, RV One Superstores Myrtle Beach. [DE 35, ¶ 37]. He again reported issues with the entry door, but he also complained about issues with the battery and with spotting on the floor. [*Id.* at ¶ 38].

The dealership made relevant repairs: adjusting the "Nader" bolt on the entry door and replacing the battery solenoid. [*Id.* at ¶¶ 39–40]. A warranty claim was submitted to Defendant for these repairs. [*Id.* at ¶ 45] (citing to February 28, 2022, Warranty Claim). However, the parties agreed not to address the spotting on the floor during this service visit. [*Id.* at ¶ 42]. Defendant alleges that the dealership had completed all repairs on March 18, 2022. [*Id.* at ¶ 43]. However, Plaintiff argues that the dealership was still attempting to resolve the entry door defect through at least April 2022, and the motorhome was out of service until May 6, 2022. [*Id.* at ¶ 43]; [DE 39, ¶ 107].

Because Plaintiff was still experiencing issues with the entry door and other defects, he contacted two independent repair facilities about performing these repairs. [*Id.* at ¶ 109] (letters to Frank's RV Repair and Triangle RV Repair dated July 8, 2022, and June 22, 2022, respectively). Ultimately, no repairs were performed by any independent repair facilities. [*Id.* at ¶ 110]. On July 12, 2022, Plaintiff, by his counsel, sent a letter to Defendant requesting diminished value damages. [*Id.* at ¶ 111].

On October 11, 2022, Plaintiff filed this lawsuit against Defendant, alleging (1) breach of express limited warranty, (2) breach of implied warranty of merchantability, (3) violation of Magnuson Moss Warranty Act, and (4) violation of the South Carolina Unfair Trade Practices Act. [DE 1]. Defendant filed the instant Motion for Summary Judgment on April 22, 2024. [DE 26].

### B. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for

its motion and identifying those portions of" the evidence that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a properly supported motion for summary judgment, "the nonmoving party must present evidence sufficient to establish a triable issue of fact on all elements of its case." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 969 (7th Cir. 2020).

In deciding a motion for summary judgment, the court may "not weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Instead, the court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* (internal citation omitted). If there is no genuine dispute of material fact, then summary judgment is appropriate, and the movant is entitled to judgment as a matter of law. *Id.*

    **C. Discussion**

In his Complaint, Plaintiff asserts four claims: (1) breach of express limited warranty, (2) breach of implied warranty of merchantability, (3) violation of Magnuson Moss Warranty Act, and (4) violation of the South Carolina Unfair Trade Practices Act. [DE 34]; *see* [DE 1]. In the instant motion, Defendant has moved for summary judgment on all of Plaintiff's claims. [DE 26]. The Court will partially grant and partially deny this motion.

    *1. Express Warranty Claim*

"To prevail on a breach of warranty claim in Indiana, a plaintiff must prove (1) the existence of a warranty, (2) a breach, (3) causation, and (4) damages." *Mathews v. REV Recreation Grp., Inc.*, 931 F.3d 619, 622 (7th Cir. 2019). Defendant argues that Plaintiff's express warranty claim fails on the second element—breach—because Plaintiff failed to provide

4

Defendant a reasonable opportunity to cure the alleged defect. [DE 27, page 7]. Even if Plaintiff provided Defendant a reasonable opportunity to cure, Defendant argues that Plaintiff failed to exhaust the back-up remedy prescribed in the warranty. [*Id*].

### a. Reasonable Opportunity to Cure–Number of Attempts

Under Indiana law, "a warranty does not fail of its essential purpose unless an RV manufacturer has been given a reasonable number of attempts to cure [a] defect, *meaning at least more than two* [*attempts*]." *Zylstra v. DRV, LLC*, 8 F.4th 597, 602 (7th Cir. 2021) (emphasis added) (citing several cases from this district holding the same). In other words, a breach of warranty claim is supported when "the problems [] remain unsolved after the third [repair] attempt." *Id.* at 603. In his Complaint, Plaintiff only alleges one issue that was not fixed after three different repair attempts—the "Entry Door defect." [DE 1, ¶ 34]. In the rest of the Complaint and in his briefing for the instant motion, Plaintiff references several other defects that remain unresolved, but they were not presented for repairs more than two times, including some that were not presented for repair at all. [*Id.* at ¶¶ 28, 31, 33, 34]; [DE 35, ¶¶ 42, 44, 49, 53, 58, 59]. Therefore, as a matter of law, Defendant did not have a reasonable opportunity to cure these "other defects," and these other defects cannot support a breach of warranty claim. Accordingly, the Court's analysis will focus on the "Entry Door defect."[1]

The parties dispute the number of times that the "Entry Door defect" was presented for repair. Defendant concedes that Plaintiff presented his motorhome to authorized service facilities with complaints regarding his entry door on three separate occasions: May 28, 2021; September

---

[1] Defendant briefly argues that any defects relating to the door are not covered by the warranty because Plaintiff employed an unauthorized repairman to replace the existing deadbolt. [DE 27, page 14]. This is directly refuted by Plaintiff. [DE 35, ¶ 30]. This is a genuine dispute of a material fact that needs to be resolved by a jury. For the purposes of the rest of the arguments raised by the parties, and discussed in this opinion, the Court will assume that defects relating to the door are covered by the warranty.

16, 2021; and February 7, 2022. [DE 38, page 2]; [DE 39, ¶ 128]; *see* [DE 34, page 5]. However, Defendant disputes that each of these three service visits qualify as a repair attempt for the same defect. [DE 38, pages 2–4]. Specifically, Defendant challenges the September visit as a valid repair attempt because the dealership made no repairs and Defendant was not notified of the visit. [DE 27, page 8]. Because Defendant reportedly had no knowledge of the September visit and no repair attempt occurred, Defendant argues that visit should not count as one of the three repair attempts needed to satisfy the reasonable opportunity to cure requirement. [DE 38, page 3].

Defendant's assertion that Plaintiff is required to independently notify Defendant of defects, service visits, and repair attempts is unfounded. The parties agree that under the warranty, Defendant's obligation to repair a defect is triggered when Plaintiff notifies "Entegra *or* an authorized dealer . . . of a defect."[2] [DE 35, ¶ 12] (emphasis added); *see* [DE 29-3]. The warranty agreement specifies that the motorhome owner's obligation is to notify *either* Defendant *or* an authorized dealer—not both. [*Id.* at 2–3]. The only time a motorhome owner is required to "contact [Defendant] Jayco directly [is] when attempting to pursue remedies under state or federal law." [*Id.* at 3]. Therefore, Plaintiff presenting a defect to an authorized dealer, without separately contacting Defendant, is sufficient to provide Defendant an opportunity to cure under the warranty. [*Id.*] ("To obtain warranty service the owner must [n]otify Entegra or an authorized dealer . . . that you are making a warranty claim[.]").

Defendant's reliance on *Mathews* for the issue of notice is misplaced. That opinion includes a sentence that states it is "doubtful" that certain repair attempts should count as opportunities to cure because the RV manufacturer was not notified about them. *Mathews*, 931

---

[2] Entegra is a division of Defendant Jayco. [DE 35, ¶ 12 n.1].

F.3d at 622. Defendant heavily leans on this line of dicta in *Mathews*, but it ignores the context outlined by the trial court in that case. In *Mathews*, the motorhome owner took his vehicle to an unauthorized servicer for repairs. *Mathews v. REV Recreation Grp., Inc.*, No. 1:15-CV-247, 2018 WL 1586254, at *4 (N.D. Ind. Apr. 2, 2018), *aff'd*, 931 F.3d 619 (7th Cir. 2019). The RV manufacturer told the motorhome owner that he could get his vehicle repaired at an unauthorized servicer but that he needed to obtain prior approval before performing warranty repairs. *Id.* at *7. Ultimately, the motorhome owner and unauthorized servicer went forward with the repairs to the vehicle without obtaining prior approval from the RV manufacturer. The Seventh Circuit contemplated that these repairs might not count as opportunities to cure because the motorhome owner knew that these specific repairs required prior approval by the RV manufacturer, but he did not obtain prior approval and proceeded with the repairs anyways. *Mathews*, 931 F.3d at 622. In the instant case, however, Plaintiff went to an authorized dealer for warranty repairs, and, therefore, he was not required to obtain prior approval for service from Defendant.

Also, Defendant improperly relies on *Kuberski v. Rev Recreation Grp., Inc.* to suggest that a "notice-and-opportunity" regime always exists directly between motorhome owners and RV manufacturers. [DE 38, page 4]; *see Kuberski*, 5 F.4th 775 (7th Cir. 2021). Such a regime is specific to the facts of *Kuberski*. In that case, the warranty agreement specifically required a motorhome owner to "provide [the manufacturer] with direct written notification of any alleged unrepaired defect, or any other dissatisfaction . . . so that the manufacturer has the opportunity to cure the problem or dissatisfaction itself." *Id.* at 778. Further, that provision of the warranty operates as a back-up remedy rather than a primary repair remedy for warranty services. *Id.* at 780 ("Such a 'notice-and-opportunity' regime gives the manufacturer a chance to make amends . . . and evaluate how its authorized dealers are performing repairs."). In the instant case,

the warranty agreement does not require direct notification to Defendant. Further, the warranty prescribes a different back-up remedy than that described in *Kuberski*.

In addition to challenging the September visit because of a lack of direct notice, Defendant argues that the September service visit does not count as a repair attempt because the authorized dealer was unable to replicate the issue and performed no actual repairs. Contrary to Defendant's argument, as long as the motorhome owner presents an issue to an authorized dealer, the dealer's failure to identify the root cause of the issue and to perform any repairs is still attributable to Defendant's "opportunities" to cure. *See Zylstra*, 8 F.4th at 607–609 (discrediting certain alleged repair attempts because the motorhome owner did not adequately present the issue to the dealer or manufacturer). Notably, the September visit was the second time that the same dealer was presented with this defect. [DE 35, ¶ 32]. And at the earlier visit, the dealer had identified the issue, replicated it, and performed some repairs. [*Id.* at ¶¶ 19–20, 32]. Defendant suggests that Plaintiff should only be credited with providing a reasonable opportunity to cure if the dealer actually identifies a cause and performs a repair. However, this improperly imputes an additional burden on the motorhome owner that is outside of his control and beyond that required in the warranty. [DE 29-3]. The motorhome owner's only obligation is to present the RV and its defects to Defendant or to an authorized dealer. [*Id.*]; *see Zylstra*, 8 F.4th at 607–609. Therefore, it would be improper to discredit Plaintiff of the September visit just because the dealer failed to make any repairs.

Alternatively, Defendant argues that if the Court were to credit Plaintiff for the September service visit, Plaintiff still failed to provide Defendant with a reasonable opportunity to cure for two reasons. First, Defendant argues that Plaintiff did not present the same door defect at each service visit, and, therefore, Defendant did not make three repair attempts on the

8

same issue. Defendant asserts that the purported "Entry Door defect" was presented as two different issues, with two different repairs performed. At the May service visit, Plaintiff reported the "Entry door comes open while driving," and the dealer attempted to repair this issue by adjusting the door latch. [DE 27, page 10–11]; [DE 35, ¶ 20]. At the February service visit, Plaintiff reported the "Entry door . . . will not stay latched," and the dealer attempted to repair this issue by adjusting the "Nader bolt" on the door. [DE 27, page 10–11]; [DE 35, ¶¶ 38, 40]. If these two issues are different, this Court cannot distinguish between them. However, because the parties disagree over whether the "Entry Door defect" is one or two separate issues, there exists a genuine dispute of material fact, which makes summary judgment inappropriate.

Second, Defendant argues that there is no evidence that the "Entry Door defect" is still unresolved after the February service visit. [DE 27, page 11]. However, Defendant acknowledges some of Plaintiff's complaints of continued deficiencies. [*Id.*] ("Plaintiff's expert admitted the entry door remained closed during transit *until he touched it*.") (emphasis added); [DE 39, ¶ 108] ("[H]is door's function improved in its operation by *70-90%*.") (emphasis added). This dispute over whether the "Entry Door defect" is unresolved after the last repair attempt also constitutes a genuine dispute of material fact, and again, makes summary judgment inappropriate.

b.  **Reasonable Opportunity to Cure–Time Out of Service**

Courts also consider the amount of time required for repairs to be completed to determine whether a motorhome owner has provided the RV manufacturer a reasonable opportunity to cure. *See Zylstra*, 8 F.4th at 602 (considering the number of days out of service in the reasonable opportunity analysis, in addition to the number of repair attempts). Defendant argues that, as a matter of law, Plaintiff's motorhome was not out of service for an unreasonable amount of time. [DE 27, page 11]; [DE 38, page 4]. Defendant asserts that the motorhome, at most, was out of

9

service for 91 days. [DE 27, page 12]. On the other hand, Plaintiff argues that his motorhome was out of service due to the "Entry Door defect" for 142 days and that a reasonable jury could find this time unreasonable. [DE 34, page 10].

In *Zylstra*, the Seventh Circuit noted that determining a reasonable amount of time for repairs is a very fact-intensive analysis. *Zylstra*, 8 F.4th at 606. The *Zylstra* court held that 153 days for repairs was not an unreasonable time to fix the defects in that case, but it declined to create a bright line rule that specifies the amount of time out of service that would defeat the essential purpose of a warranty in all cases. *See Tinnermon v. REV Recreation Grp., Inc.*, No. 1:19-CV-336-HAB, 2023 WL 1765414, at *10 (N.D. Ind. Feb. 3, 2023) (applying the "time out of service" analysis from *Zylstra*). In these types of cases, a jury must decide whether a motorhome owner still received the benefit of the warranty, despite the vehicle being out of service for a prolonged period of time due to repairs. *See id.* at 10 (denying summary judgment where the RV was out of service for 200 days); *see also Neary v. Thor Motor Coach, Inc.*, No. 3:20-CV-338-RLM-MGG, 2022 WL 4080899, at *4 (N.D. Ind. Sept. 6, 2022) (denying the same for 219 days out of service).

Defendant argues that even if the Court accepts Plaintiff's purported time out of service—142 days—as accurate, the motorhome was still not out of service for an unreasonable time. [DE 38, page 4]. Defendant relies on the holding in *Zylstra* and argues that the 153 days deemed reasonable by the court, while not a bright line rule, is "a marker with 'useful guidance.'" [*Id.*] (quoting *Kutz v. Jayco, Inc.*, No. 3:20-CV-281 JD, 2023 WL 5898512 (N.D. Ind. Sept. 7, 2023)). However, the facts of *Zylstra* are different than those in the instant case, specifically related to the number of defects. In *Zylstra*, the plaintiff's motorhome was out of service for 153 days, but the repairs addressed 29 defects. *See Kutz*, 2023 WL 5898512, at *4

10

(counting the number of defects involved in *Zylstra*). In the instant case, Plaintiff's motorhome was allegedly out of service for 142 days, but Plaintiff purports that only a single defect was addressed—the Entry Door defect. [DE 34, page 11]. While Defendant asserts that the February service visit involved "the repair of multiple issues," the undisputed evidence shows that the service visit involved, at most, two defects. [DE 38, page 5]; [DE 35, ¶¶ 38–43].[3]

Considering the evidence favorably to Plaintiff, the Court finds that a reasonable jury could determine that 142 days is an unreasonable amount of time to service just one or two defects. Even if Plaintiff's purported time of 142 days is an inflated value, Defendant's argument for a lower calculation is not supported by the undisputed evidence. Defendant argues that the 142 days includes time from non-warranty services or time when the motorhome could have been picked up by the owner but was left at the dealer. [DE 38, page 5]. But Defendant does not cite to undisputed evidence in the record to show how much time, if any was dedicated to non-warranty repairs. And while the undisputed record shows that after the February service visit the motorhome was initially ready to for pick up on March 18, the record also suggests that the motorhome was not actually picked up because the dealer continued to attempt repairs for the same defect. [DE 35, ¶ 43]. Therefore, a genuine dispute of material fact exists regarding the proper calculation for the motorhome's time out of service, and these factual determinations cannot be made at the summary judgment stage.

### c. Backup Remedy

Even if Defendant failed to cure the alleged defects in a reasonable number of attempts or within a reasonable amount of time, Defendant argues that Plaintiff failed to exhaust the backup

---

[3] Plaintiff initially complained about a third defect, "orange spots on the floor" of the motorhome, but the parties agreed to not have that issue repaired at that time. [DE 35, ¶ 42].

11

remedy prescribed in the warranty. [DE 27, page 12]; [DE 38, page 6]. The backup remedy in the warranty provided that "[i]f the primary repair remedy fails . . . [the motorhome owner's] sole and exclusive remedy shall be to have Entegra pay an independent service shop of [his] choice . . . OR have Entegra pay diminished value damages if the defect is incurable." [DE 35, ¶ 13]. Defendant argues that Plaintiff did not comply with the backup remedy because no independent repair shop actually performed any repairs, and Plaintiff did not contact Defendant for help finding independent repair shops or otherwise make a good faith effort to comply with backup remedy. [DE 27, page 14]. Further, Defendant argues, Plaintiff's request for diminished value damages is precluded because Plaintiff cannot demonstrate the defect is incurable. [DE 38, page 7].

     A reasonable jury, viewing the evidence in light most favorable to Plaintiff and drawing all reasonable inferences in his favor, could find that Plaintiff did not fail in his obligations under the backup remedy provision. First, Plaintiff contacted two different independent repair facilities and requested that they perform repairs, including repairs for the Entry Door defect. [DE 39, ¶ 109]. Plaintiff claims that one of the shops did not respond to his "multiple" requests for service and the other shop "couldn't guarantee a fix on the door and would have a hard time replacing it." [DE 39, ¶ 110]. Because the warranty specified that "Entegra pay an independent service shop of [*Plaintiff's*] choice," a reasonable jury could find that the backup remedy provision failed its essential purpose because Plaintiff's chosen independent service shops refused to or were incapable of conducting the required repairs. *See Neary*, 2022 WL 4080899, at *5 (N.D. Ind. Sept. 6, 2022) (denying summary judgment because the motorhome owner did not fail to

exhaust the backup remedy[4] when an independent shop informed the motorhome owner that it could not repair the defects at issue).

Second, Plaintiff sent a letter to Defendant requesting diminished value damages. [DE 39, ¶ 111]. Defendant argues that a request for diminished value damages is precluded because "Plaintiff has presented no evidence, or even alleged, that the defect with the door . . . is incurable." [DE 38, page 7]. This is not supported by the evidence on record. To the contrary, much of Plaintiff's argument is dedicated to describing how the Entry Door defect remains unresolved despite multiple repair attempts by Defendant's authorized dealerships. *See* [DE 34]. In addition, Plaintiff alleges that an independent repair shop informed him that it would be unable to fix the defect. [DE 39, ¶ 110]. Defendant's expectation that Plaintiff does more to demonstrate that the defect is "incurable" is not supported by case law. *See Neary*, 2022 WL 4080899, at *5 (denying summary judgment and finding that the motorhome owner did not fail in his obligations under the backup remedy provision when "[the independent repair shop] did not explicitly state that the defects were 'uncurable'"); *see also Doman v. Heartland Recreational Vehicles, LLC*, No. 3:23-CV-218 JD, 2023 WL 6637619, at *5 (N.D. Ind. Oct. 12, 2023) ("[The motorhome owners] availed themselves of the backup remedy via a demand letter seeking damages or a replacement vehicle."). The backup provision provides no basis for an award of summary judgment to Defendant.

### 2. *Implied Warranty Claim*

Under Indiana law, there is an implied warranty of merchantability in the sale of a motorhome. *See Pattee v. Nexus RVs LLC*, No. 3:19-CV-162 JD, 2022 WL 834330, at *14 (N.D.

---

[4] The backup remedy provision in *Neary v. Thor Motor Coach, Inc.* has nearly identical verbiage to the backup remedy provision in the warranty at issue in the instant case.

13

Ind. Mar. 21, 2022) (denying summary judgment as it relates to an implied warranty claim). To sustain a claim for breach of an implied warranty, same as for a breach of an express warranty, a motorhome owner must give the RV manufacturer "a reasonable opportunity to cure any alleged defect." *Zylstra*, 8 F.4th at 609. Defendant argues that Plaintiff never afforded Defendant a reasonable opportunity to perform the repairs—mirroring its arguments against the claim for breach of an express warranty. [DE 27, page 15]; [DE 38, page 8]. However, as discussed in the previous section, there exists a genuine dispute over whether Plaintiff presented the Entry Door defect to Defendant for three repair attempts, and thereby satisfying the requirement to provide the RV manufacturer a reasonable opportunity to cure that specific defect. In the absence of any additional argument by Defendant, the Court concludes that Plaintiff has established a breach of implied warranty claim sufficient to survive Defendant's motion and denies summary judgment regarding the Entry Door defect. For those same reasons discussed in the previous section, the Court will grant summary judgment regarding any other defect.

### 3. *Magnuson-Moss Warranty Act Claim*

The Magnuson-Moss Act "does not provide an independent basis for liability, rather it only provides for federal jurisdiction for some state claims." *Pattee*, 2022 WL 834330, at *15 (N.D. Ind. Mar. 21, 2022) (quoting *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001)). In other words, a claim under the Magnuson-Moss Act "rises and falls with the underlying state claim." *Id.* Plaintiff's Magnuson-Moss claim is based on his claims for breach of express warranty and breach of implied warranty. [DE 27, page 18]; [DE 34, page 15]. As set forth above, the Court partially grants and partially denies Defendant's motion regarding these claims for breach of warranties. Accordingly, the Court partially grants and partially denies Defendant's

14

motion regarding the Magnuson-Moss claim. As discussed previously, summary judgment is denied regarding the Entry Door defect and granted regarding any other defect.

### 4. *South Carolina Unfair Trade Practices Act Claim*

The South Carolina Unfair Trade Practices Act ("SCUTPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20(a). To succeed on a SCUTPA claim, a plaintiff must demonstrate "(1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." *Assa'ad-Faltas v. Wal-Mart Stores E., L.P.*, No. CV03183563TLWSVH, 2021 WL 2228464, at *7 (D.S.C. Jan. 11, 2021) (quoting *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998)). For the third element of a SCUTPA claim, it is not sufficient for a plaintiff to show "conduct that affects only the parties to the transaction and not the public interest." *Id.* (quoting *Bessinger v. Food Lion, Inc.*, 305 F.Supp.2d 574, 581 (D.S.C. 2003)). Instead, the plaintiff must show that the unfair or deceptive acts have the potential for repetition. *Id.* This can be demonstrated by "'showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence' or 'showing the company's procedures created a potential for repetition of the unfair and deceptive acts.'" *Id.* (quoting *Singleton v. Stokes Motors, Inc.*, 595 S.E.2d 461, 466 (S.C. 2004)).

Plaintiff has failed to put forth any evidence that Defendant's "unfair and deceptive acts" had an adverse impact on the public interest. Specifically, Plaintiff failed to provide admissible evidence to show that Defendant's purported conduct has the potential for repetition. In support of this claim, Plaintiff offered evidence relating to the purchase of his motorhome, defects in his

motorhome, and attempted repair services to his motorhome. [DE 34, page 16–17]. This evidence only relates to the specific transaction between the parties in this case and not the public interest. Therefore, Plaintiff has failed to put forth any evidence that Defendant violated SCUPTA and this Court grants Defendant's motion for summary judgment relating to this claim.

## CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment [DE 26] is GRANTED-IN-PART and DENIED-IN-PART. The motion is GRANTED for the claims relating to the South Carolina Unfair Trade Practices Act, and those claims are DISMISSED. The motion is DENIED for the claims of breach of express warranty, breach of implied warranty, and violations of the Magnuson-Moss Warranty Act that are derived from the Entry Door defect. The motion is GRANTED for those same claims that are derived from any other defect besides the Entry Door defect, and those claims are DISMISSED. Accordingly, Plaintiff's claims of breach of express warranty, breach of implied warranty, and violations of the Magnuson-Moss Warranty Act will proceed solely based on the Entry Door defect.

SO ORDERED.

ENTERED: January 3, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court